OPINION
This opinion consolidates two appeals that were taken from separate final orders that were entered in the same action. The two appeals present a common issue: whether the trial court erred when it construed certain covenants restricting the use of a tract of land in a dedicated plat to permit its owner to construct a public road across it.
Eighteen tracts of land, each fronting to the north on Brewer Road, in Mason, Ohio, comprise a plat known as "Farview Farms." The tracts vary in size from five to nine acres. In accordance with the plat record, and by reference in the deed for each tract, the plat is subject to thirteen covenants and restrictions. Three are of significance here. As they appear in the original plat, which was recorded thirty years ago, they stated:
 3. All buildings shall be placed at least 70 feet back (or as noted on drawing) from the centerline of existing road, (Porches and bay windows excepted) and no nearer than fifteen feet of any side property line.
* * *
 9. These covenants and restrictions are to run with the land and with the other tracts being surveyed by this grantor out of a certain 127 acre farm, of which the tract herein is a part and shall be binding on all of said tracts and the owners thereof and all persons claiming under them until July 1, 1980, at which time said covenants shall automatically be extended for successive periods of ten (10) years. At any time these covenants may be amended by written consent of sixty (60) per cent of the then owners of tracts, each owner having one vote for each separate tract owned by him.
(Emphasis supplied.)
* * *
 13. All land in this subdivision shall be known and used as residential homesites or for agricultural purposes. No tract shall be re-subdivided into more than one additional building lot thus allowing no more than a maximum of two (2) dwellings on any of the original tracts herein mentioned.
In 1978, John Zopff purchased a parcel of approximately 98 acres of land lying to the south of Farview Farms plat. On its south side, Zopff's parcel fronts on Bethany Road. Zopff purchased the land with the view of developing it for residential homesites, but later concluded that the Bethany Road frontage could not provide suitable ingress and egress because of the confluence there of two creeks.
On February 25, 1996, Zopff entered into a contract to purchase the tract in Farview Farms identified on the plat as Tract 12. It was Zopff's intention to construct a public road across Tract 12 connecting Brewer Road to his 98 acres of land to the south to provide ingress and egress for its development.
In June of 1996, Zopff submitted a preliminary plan to the Warren County Regional Planning Commission, seeking the Commission's approval to subdivide his 98 acre parcel into a plat of 32 residential homesites to be called Hudson's Run. The plan showed a public road across Tract 12 in Farview Farms, connecting Hudson's Run with Brewer Road.
Upon learning of Zopff's intention to build a public road across Tract 12, the required per cent of owners of the other tracts in Farview Farms voted to amend covenant 3, quoted above. The amended covenant, which was duly recorded on June 19, 1996, states:
 All building shall be placed at least seventy (70) feet from the center line of any road (porches and bay windows excepted) and no nearer than fifteen feet from any side property line. No street or road may be constructed on any real property governed by these Protective Covenants and Restrictions. (Emphasis supplied to show new provision.)
On September 19, 1996, the owner of Tract 12 conveyed title to the tract to Zopff by warranty deed. The deed of conveyance states that Zopff's title is subject to ". . . easements, covenants, restrictions, and matter of public record." Prior to the conveyance, the owner of Tract 12 had made Zopff aware of the amendment of covenant 3, quoted above.
Before Zopff could obtain the necessary approval of the Warren County Regional Planning Commission and the County Engineer for his Hudson's Run plat, the Plaintiffs herein, who own a tract in Farview Farms adjoining Tract 12, commenced an action to enjoin Zopff's planned construction of a road across Tract 12. Plaintiffs argued that the road is prohibited by the relevant covenants and restrictions applicable to tracts in Farview Farms. Zopff answered, and also filed counterclaims (1) seeking a declaratory judgment that the planned road is not prohibited by the covenants and restrictions and (2) alleging wrongful interference with his property rights and seeking damages therefor.
On October 10, 1997, the trial court heard evidence on the requested injunction, and it thereafter entered the temporary restraining order that the Plaintiffs had requested. Zopff subsequently filed an amended counterclaim and a third-party complaint, joining additional parties who also own tracts in Farview Farms, alleging that they had conspired to deprive him of the use and enjoyment of his land.
In July and August, 1998, the parties on each side filed motions for summary judgment. The court granted summary judgment for Zopff on his complaint for declaratory judgment, holding that the planned road across Tract 12 is not prohibited by the covenants restricting use of tracts of land in the Farview Farms plat. The court certified its summary judgment pursuant to Civ.R. 54(B), and Plaintiffs filed a timely notice of appeal. (CA98-10-135). Subsequently, the court granted a motion to dismiss Zopff's counterclaims and cross-claims, and he appealed. (CA98-12-153). The two appeals have been consolidated in this proceeding. The assignments of error in each will be considered separately.
 CA98-10-135
In this appeal, the several owners of the tracts of land in Farview Farms who are opposed to Zopff's construction of a road across Tract 12 present two assignments of error. Because the two assignments present issues that are intertwined, they will be considered together.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PARTY DEFENDANT BORKE IN GRANTING ZOPFF'S AND ZOPFFS' MOTIONS FOR SUMMARY JUDGMENT, HOLDING THAT RESTRICTION NO. 13 DOES NOT PRECLUDE THE CONSTRUCTION OF A PUBLIC ROAD.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THIRD PARTY DEFENDANT BORKE IN GRANTING ZOPFF'S AND ZOPFFS' MOTIONS FOR SUMMARY JUDGMENT, HOLDING THAT THE "FIRST AMENDMENT TO PROTECTIVE COVENANTS AND RESTRICTIONS — COUNTRY HOME SITES, INC. DEVELOPMENT a/k/a FARVIEW FARMS" CANNOT BE ENFORCED.
In the law of real property, the term "covenant" denotes a contract. The common use of the word refers to the promises concerning real property contained in conveyances or other instruments. 20 American Jurisprudence 2d, (1995), Covenants, Section 1. A covenant is generally held to be personal. However, a covenant is said to "run with the land" when subsequent owners of the land are also benefitted or burdened by the covenant. Id., at Section 42. Restrictive covenants are covenants running with the land, intended to limit the grantee's use of the land to specified purposes, with the object of protecting the interests of all landowners in the same allotment or community. The scheme forms an inducement to each purchaser to buy, and it enters into and becomes a part of the consideration for their purchases. Dillon v. Gaker (1936), 22 Ohio Law Abs. 219, aff'd. 57 Ohio App. 90.
Covenants restricting the use of land or the location or character of buildings or other structures thereon create easements. Such easements are frequently called "negative easements," and restrain the owner of the servient tenement in the exercise of some of his rights in respect to his estate, in favor of the owners of the dominant tenements. Davidson v. BuckeyeHomes, Inc. (1942), 37 Ohio law Abs. 570.
Restrictions on the free use of real property are not favored.Goodyear Heights Realty Co. v. Furry (1929), 33 Ohio App. 432. Nevertheless, restrictive covenants should be construed reasonably and so as to effect the purpose for which they were intended. Dillon v. Gaker, supra.
 Where an owner of land has adopted a general building scheme or plan for the development of a tract of property, designed to make it more attractive for residential purposes by reason of certain restrictive agreements to be imposed upon each of the separate lots sold, embodying the same in each deed, such agreements will generally be upheld, provided the same are not against public policy.
Dixon v. Van Sweringer Co. (1929), 121 Ohio St. 56. Further, "[w]here there is such a general plan or scheme of improvement, the owner of one lot may enforce such a covenant against the owner of another lot." Id. At 61.
There are five requirements for the creation of an enforceable restriction on the use of land by covenant.
First, the restrictions must be a part of the general subdivision plan, applicable to all lots in the subdivision. Grantv. Hickok Oil Co. (1948), 84 Ohio App. 509.
Second, lot purchasers must be given adequate notice of the restriction. Lopartkovich v. Rieger (1940), 66 Ohio App. 332.
Third, the restrictions must be in accord with public policy, and they are unenforceable to the extent they are not. Dixon v.Van Sweringen Co, supra.
Fourth, the restriction cannot be implied, but must be express. Taylor v. Summit Post Co. No. 19 (1938), 60 Ohio App. 201.
Fifth, the restrictions must run with the land, and therefore must be inserted in the form of covenants in the owner's chain of title. Otherwise, subsequent purchasers are not bound. Davidsonv. Buckeye Homes, Inc., supra.
Plaintiffs brought this action to enjoin Zopff's construction of the proposed road across Tract 12, arguing that covenant 3, as amended pursuant to the process specified by covenant 9, expressly prohibits public roads on any tract in Farview Farms. Further, the amendment was of record when Zopff acquired his title to Tract 12. The trial court refused to apply the amendment to covenant 3 expressly prohibiting public roads, holding that the amendment procedure in covenant 9 "cannot be given a meaning which would authorize new or additional burdens to be added to the already existing restrictions and covenants." Instead, the court applied covenant 13, with reference to its "residential homesites" restriction. Relying on Bove v. Giebel (1959), 169 Ohio St. 325, the court held that covenant 13 cannot be enforced by the other owners to prevent Zopff from using Tract 12 for construction of a public road as a means of ingress and egress to and from Zopff's adjoining Hudson's Run subdivision because Hudson's Run is likewise subject to a residential homesites restriction.
Plaintiffs argue on appeal that the trial court misappliedBove v. Giebel, supra, because Bove approved a private driveway through a subdivision to provide access to an otherwise landlocked tract, while Zopff intends to build a public road to provide access to land that has another method of ingress and egress, that is, to Bethany Road on the south. Plaintiffs argue that the trial court should, instead, have applied the rule of Wallace v. CliftonLand Co. (1915), 92 Ohio St. 349.
In Wallace, supra, the Supreme Court prohibited construction of a public road across a private right of way in a subdivision to benefit an adjoining landlocked parcel. The court held that because the owners of other lots in the subdivision, all of which were subject to a "residential purposes" restriction, had presumably bought their properties with the intention of avoiding the noise and bustle that the proposed public road would entail, they were entitled to enforce the restriction to preserve that benefit.
Whether the court erred in construing the covenants in the Farview Farms plat as it did depends on the intent of the original grantor and grantees concerning them. Questions concerning the intentions of the parties to a contract with respect to its provisions present issues of law for the court to decide, if they are clear and unambiguous. The trial court found no ambiguity. Therefore, our review of the issues that the trial court determined with respect to the meaning of the covenants and restrictions involved is de novo.
Covenant 13, quoted above, does not restrict use of tracts in Farview Farms to "residential purposes," as in Bove v. Giebel,supra. Rather, covenant 13 restricts use of tracts to "residential homesites or for agricultural purposes." Zopff argues that the term "residential homesites" describes only the kind of dwelling that may be built, if one is built, necessarily prohibiting commercial uses but not a road that serves the purpose specified. A contrary interpretation would enlarge the prohibition, according to Zopff, and is thus prohibited. Kiley v.Hall (1917), 96 Ohio St. 374. In any event, Zopff contends, covenant 13 is ambiguous with regard to roads and thus may not be applied to prohibit them.
As used in restrictive covenants, a "purpose" identifies an object, which may be achieved in most instances by more than one particular use. However, the term "residential homesite" is more restrictive, identifying the particular use that is exclusively permitted. The alternative "agricultural purposes" is not in issue.
As it is used in covenant 13, the word "residential" is an adjective modifying the word "homesite" to limit the type of home
that may be sited on the land concerned. The word "homesite" is a noun specifying the permitted functional use of the site itself, which is location of homes for residential use. That use reasonably permits construction of a private driveway on the land to serve the residence sited there. However, it does not reasonably also include construction of a public road across the land, even though the road would serve other residential properties. The fact that the other properties are subject to a like restriction is irrelevant, because that similarity cannot overcome a positive prohibition.
Though the restrictive use permitted in this instance is narrower and more specific than the "for residence purposes only" restriction in Wallace v. Clifton Land Co., supra, the facts of the two cases are much the same. In Wallace, the use in question was, as here, a public road. The owner of the land who wished to build the road was on notice of the restriction when he purchased the land. And, the owners of the other lots subject to the restriction could reasonably be found to have purchased their lots with the expectation that the common restriction would prohibit the use concerned. Therefore, Wallace is the more persuasive authority in resolving the issue presented.
Nevertheless, the fundamental error that the trial court committed, in our view, was its threshold holding that the amendment of covenant 3 specifically prohibiting construction of public roads across tracts in the Farview Farms tract was void or unenforceable because covenant 9, the amendments provision, cannot be employed to impose new and additional burdens. The trial court cited no authority for its holding that new and additional burdens may not be imposed in this fashion. On appeal, Zopff cites VanDeusen v. Ruth (1938), 343 No. 1096, 125 S.W. 1, for the proposition that, because of the fundamental policy allowing the free use of land, amendments to existing restrictions may operate only to make them less harsh, or extinguish them entirely.
In Van Deusen, restrictions against the construction of apartment buildings in a subdivision contained an exception for those lots that fronted on a particular road. The instrument creating the restrictions provided that it could be "modified, amended, released, or extinguished" after ten years by a certain percentage of the owners, not including the developer. Subsequently, an amendment was adopted prohibiting apartment buildings on the lots where they were previously permitted by the exception. Further, the developer, though acting in another capacity, was one of the persons who signed the amendment agreement.
The court in Van Deusen held that the amendment provision, inasmuch as it permitted restrictions to be "released or extinguished by amendment or modification, necessarily contemplated only amendments that alleviated the burdens involved. Because elimination of the exception made the restriction more harsh, that could not be accomplished by amendment. The court was also persuaded that the amendment was ineffective because the developer had signed the agreement creating it.
The construction given the amendment provision in Van Deusen
is consistent with the canon of construction noscitur a sociis, to interpret a general term ("modified, amended") in a series to be similar to more specific terms in the same series ("released, or extinguished"). However, covenant 9 of the Farview Farms plat contains no more specific terms that limit the term "amendment" as it appears there. Therefore, Van Deusen offers little support for the trial court's holding that covenant 9 does not permit amendments that impose greater burdens or restrictions.
Where the right to amend protective covenants is reserved to the original developer, courts have generally construed them to be personal and not to run with the land for the benefit of subsequent grantees. On the other hand, where the power to amend is extended to subsequent grantees who are afforded a more or less democratic method of amendment, courts have generally viewed agreements to amend as mutual or reciprocal covenants. And, just as courts have generally recognized the power of property owners to impose protective covenants, they have often not questioned contracts or covenants which permitted amendment of the restrictions imposed. See 4 ALR 3d 570.
Here, covenant 9 of the Farview Farms plat authorizes sixty percent of the owners of all the tracts to vote to amend any covenant, without limitation, each tract entitling its owner to one vote. That is a reasonably democratic process, and it supports a finding that the amendment provision in covenant 9 is a reciprocal covenant to which each owner agreed as part of the consideration the owner gave to acquire the fee interest in his or her tract. Therefore, absent any basis in equity to not enforce the particular amendment of covenant 3, the owners are entitled to enforce it.
Zopff suggests such an equitable basis in his contention that the owners concealed their action from him, or at least failed to give him notice of it. However, there is no basis on which to find that Zopff was entitled to notice. He was not an "owner," and thus entitled to a vote, when the amendment was adopted and recorded in July. He became an owner only when he acquired his title to Tract 12 by warranty deed in September. When the amendment was adopted and recorded, Zopff's contract to purchase provided him no more than an equitable interest in the land. We cannot find that his equitable interest required the owners to somehow identify him in order to give him notice of their proceedings to amend covenant 3. The better reasoning, and sounder policy, is to require a purchaser such as Zopff to search the public records to learn of a recorded amendment before he accepts delivery of his deed.
In that same connection, Zopff argues that the equitable interest that he acquired when he signed a contract to purchase Tract 12 makes the subsequent amendment of covenant 3 unenforceable as to him. Zopff relies on McMillan v. Iserman
(1982), 120 Mich. App. 785, 327 N.W.2d 559.
In Iserman, an owner of a lot in a subdivision leased the premises to a tenant for operation of a state-licensed group residential facility. Subsequently, the restrictions applicable to the subdivision were amended, pursuant to an amendment provision, to prohibit the facility. The Michigan Court of Appeals held that other lot owners who sought to enforce the new restriction were estopped from doing so, for two reasons. First, the prohibition that was enacted subsequent to the lease should not be applied to force the lot owner into a breach of contract. Second, the prohibition of a state-licensed facility was a violation of public policy.
To be declared void as against public policy, a restrictive covenant must violate some statute, or be contrary to judicial decision, or against public health, morals, safety or welfare, or in some form be injurious to the public good. Dixon v. VanSweringen Co., supra. Zopff points to no such result in this instance. At oral argument he suggested that the Warren County Regional Planning Commission's preliminary approval of his plan for Hudson's Run showing a road across Tract 12 demonstrates some form of public sanction that supports it. We do not agree. The approval was only preliminary, not final. Further, any such approval cannot operate to require construction of a public road or be an acceptance by the public of any dedication of land to that purpose. R.C. 711.10.
A more compelling factor distinguishing the facts here from those in Iserman lies in the status of party who would avoid application of the restriction. In Iserman, that party owned the title to the lot before the restriction was adopted and had committed by contract to allow a use on the lot that the subsequent restriction prohibited. Here, Zopff did not own Tract 12 when covenant 3 was amended to specifically prohibit public roads across the tracts, and he had not committed by contract to install one or have someone else do so. Zopff was then but a prospective purchaser by contact, which conditioned his promise to purchase on the restrictions applicable to the land involved. Zopff might have sought to rescind his contract to purchase Tract 12 after the new restriction was adopted, but he did not. We cannot find that the amendment damaged any legal or equitable interest that Zopff then held in any manner that would estop the other owners from now enforcing it against him.
Covenant 9, which permits amendments to the covenants, does not restrict the nature of an amendment or the burdens resulting from it. Thus, new burdens are not excepted from the power of amendment that covenant 9 confers on the owners, or sixty per cent of them. So long as the amendment does not violate public policy, is enacted as provided, and applies equally to all land which the covenants affect, it is not prohibited, notwithstanding the fact that it imposes new burdens.
Each owner of a tract in the Farview Farms plat took his or her tract subject to the power of sixty per cent of the landowners to amend any of the covenants governing the plat. That provision was part of the consideration in the transactions in which each acquired his or her land. The power to exercise the right may not be denied the owners when 60% of them act to exercise the power.
The trial court erred when it held that covenant 9 cannot be employed to adopt amendments to other restrictive covenants that impose new and additional burdens. It may, and the amendment of covenant 3 prohibiting public roads on any of the Farview Farms tracts is enforceable notwithstanding the fact that an additional burden may be imposed. However, in relation to covenant 13, none is imposed in this instance. Therefore, the trial court should have denied Zopff's motion for summary judgment and, instead, granted the motion filed by the Plaintiffs to declare that they may prohibit Zopff from building the road he has proposed.
The Plaintiffs' first and second assignments of error are sustained.
 CA98-12-153
In this appeal, John Zopff argues that the trial court erred when it granted the Plaintiffs' Civ.R. 12(B) motion to dismiss Zopff's counterclaim and his third-party complaint. Zopff presents two assignments of error, which are interrelated. Therefore, we will consider them together.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS AND THIRD PARTY PLAINTIFFS-APPELLANTS JOHN ZOPFF, TRUSTEE, JOHN ZOPFF AND EILEEN ZOPFF IN DISMISSING COUNT II OF THE COUNTERCLAIM AND THIRD PARTY COMPLAINT.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANTS AND THIRD PARTY PLAINTIFFS-APPELLANTS JOHN ZOPFF TRUSTEE, JOHN ZOPFF AND EILEEN ZOPFF IN DISMISSING COUNTS II AND III OF THE COUNTERCLAIM AND THIRD PARTY COMPLAINT ON THE GROUND THAT THEY ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS FOR SLANDER OF TITLE.
After the trial court had granted a summary judgment for Zopff on his declaratory judgment claim, the Plaintiffs moved to dismiss his Counterclaim and Third Party Complaint, pursuant to Civ.R. 12(C), which authorizes a judgment on the pleadings. "Essentially, such a motion is a Rule 12(B) motion to dismiss for failure to state a claim (filed) after the pleadings are closed." Baldwin's Ohio Civil Practice (1977), Vol. 1, Section AT 12-9. Its only difference from a Civ.R. 12(B) motion is that a Civ.R. 12(C) motion applies to all the pleadings that have been filed, and any defenses therein, not only to the complaint. Id.
Count I of Zopff's Counterclaim sought the declaratory relief that the court granted him. Count II sought monetary damages if Zopff is prevented from building the road across Tract 12, the amount of damages being the resulting diminution in the value of the property the road would serve, because Zopff could not then develop it as he had planned. In their motion to dismiss, Plaintiffs argued that the summary judgment rendered for Zopff on Count I, permitting the road, rendered his claim for relief in Count II moot. The trial court agreed, finding that the two claims are alternative, and it dismissed count II as moot.
Zopff argues on appeal that the trial court erred because his damages claim in Count II is independent of his request for declaratory relief in Count I. We agree that they are pleaded separately, and that Zopff's prayer for relief does not seek relief in the alternative with respect to them. However, the operative effect of the summary judgment for Zopff on Count I, permitting him to build the road, eliminates the factual premise on which Count II is predicated, that Zopff will be damaged if he can't build the road. That was the basis of the court's order granting the Plaintiffs' motion to dismiss Count I, and on the record before the court it was correct.
Our decision reversing the trial court's summary judgment to hold that the Plaintiffs may enforce their negative easement to prevent Zopff from building his road restores the factual premise on which Zopff's damage claim is predicated. However, we are not thereby required to also reverse the trial court's order dismissing Count II of Zopff's counterclaim if another, independent basis exists to affirm the trial court's order. Statev. Peagler (1996), 76 Ohio St.3d 496.
Count II of Zopff's counterclaim has the appearance of a "poison pill," that is, a strategy designed to discourage his adversaries from prosecuting their own claim for relief by imposing an unacceptable cost if their effort is successful. Obviously, that strategy did not succeed. More pertinent to the question presented here, however, is the fact that Zopff's claim offers no basis on which relief may be granted.
In the law of torts, monetary damages may be awarded for injuries resulting from an actor's breach of a duty imposed on him by law to act or refrain from acting for the benefit of another person to whom the duty is owed. Zopff neither cites nor references any such duty that the Plaintiffs owed him, nor if there is such a duty how any wrongful conduct of the parties breached that duty. Zopff's property may be diminished in value because he cannot now develop it as he had intended. However, in so far as this dispute is concerned, that loss results from the Plaintiffs' enforcement of their rights of contract in a manner and to a result sanctioned by law. Therefore, there can be no concomitant breach of a duty that the law imposes, and absent a breach of duty there is no claim for relief that is actionable.
Civ.R. 12(B)(6) permits the court to dismiss a claim for relief for failure to state a claim upon which relief can be granted. The rule applies to any claim stated in the pleadings, including counterclaims. Generally, a Civ.R. 12(B)(6) motion asserts that the pleader has failed to plead the operative grounds creating a claim. Mitchell v. Lawson MilkCo. (1988), 40 Ohio St.3d 190. "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recover."O'Brien v. University Community Tenants Union, Inc. (1975),42 Ohio St.2d 242.
Because it failed to state an actionable claim for relief, Count II of Zopff's Counterclaim failed to state a claim upon which relief may be granted. Therefore, it was subject to dismissal upon motion pursuant to Civ.R. 12(B)(6). The order of the trial court granting the motion to dismiss Count II will be affirmed on that basis.
Zopff alleged in his Third Party Complaint that by amending covenant 3 of the Farview Farms plat so as to prohibit Zopff's construction of a road to Hudson's run and then recording the same, Plaintiffs/Third-Party Defendants had "maliciously and intentionally combined and conspired" to deny Zopff and his spouse the lawful use and enjoyment of their property "by creating a cloud on the title to their property." Zopff asked for compensatory damages of $1,700,000, punitive damages of $1,500,000, as well as costs and attorneys fees.
Plaintiffs/Third-Party Defendants moved to dismiss Zopff's Counterclaim, alleging that the claim for relief is one for slander of title, which pursuant to R.C. 2305.11 must be brought within one year after the cause thereof accrued. Therefore, because Zopff's Third Party Complaint was filed more than one year after covenant 3 of the Farview Farms plat was amended and the amendment was recorded, they argued that the claim is barred and must be dismissed. The trial court agreed, and it dismissed Zopff's Third-Party Complaint on that basis.
"Slander of Title" is a branch of the law of defamation that "permits an action to be brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." Buehrer v. Provident Mutual Life Ins. Co. of Philadelphia
(1930), 37 Ohio App. 250, 256. The action requires proof of injurious words falsely and maliciously spoken, damage, and resulting pecuniary loss. Id.
Zopff argues that his Third-Party Complaint did not allege slander of title, and we agree. No false or defamatory words are involved. Rather, Zopff alleges that the Plaintiffs/Third-Party Defendants maliciously conspired to create a "cloud on the title" to his property, delaying its development and requiring him to expend monies for attorneys fees to remove the "cloud". All of this amounts to a "willful and wrongful invasion of, taking of and unlawful impairment of Zopff's property rights." (Paragraph 18).
Zopff's pleading substitutes extravagance for logic and precision. The notion that an act which operates to diminish one's property rights constitutes a prohibited taking has gained currency in recent years. Lucas v. South Carolina Costal Council
(1992), 505 U.S. 1003, 120 L.Ed.2d 798. BSW Development Corp v.City of Dayton (1998), 83 Ohio St.3d 338. However, the prohibition applies to governmental action, not to the acts of private parties. See, Amendment V, Constitution of the United States; Article I, Section 19, Ohio Constitution.
Essentially, Zopff's claim is that Plaintiffs/Third-Party Defendants have wrongfully conspired and combined to create a "cloud on the title" to his property. A cloud on the title to property is an outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and on its face has that effect, but can be shown by extrinsic proof to be invalid or inapplicable to the estate in question. Black's Law Dictionary, 5th Ed. (1979), citing BestInv. Co. v. Parkhill (Tex., 1968, 429 S.W.2d 531. A conveyance, mortgage, judgment, tax levy, etc., may all, in proper cases, constitute a cloud on title. Id., citing Newpar Estates, Inc. v.Barilla (1957), 161 N.Y.S. 2d 950.
The remedy for removing a cloud on title is usually the means of an action to quiet title. Id. An action to quiet title is a proceeding brought to establish the plaintiff's title to land by bringing into court an adverse claimant and there compelling him either to establish his claim or be forever after estopped from asserting it. Id.
None of the operative facts that Zopff alleges portray any form of outstanding claim that the adverse parties have or are alleged to have which would impair Zopff's title to Tract 12 in the Farview Farms plat or to the land on which he intends to plat the Hudson's Run subdivision. Indeed, Zopff claims none. Instead, he invokes the phrase "cloud on the title" to connote a recorded covenant creating a restrictive easement which, according to his claims, diminishes the value of his land by restricting its use. Those claims, even if true, do not portray a cloud on title.
Zopff's cloud on title claim is merely a platform from which to bootstrap his conspiracy claim, which Zopff admits is the linchpin of his Third-Party Complaint. Even if there was a conspiracy, however, its purpose must be an unlawful act independent of the actual conspiracy. Cruz v. South DaytonUrological Associates (1997), 121 Ohio App.3d 655.
None of the acts which the Plaintiff/Third-Party Defendants are alleged to have committed are unlawful acts. They have merely acted to protect their own interests, in a lawful manner. Any resulting pecuniary loss that Zopff has suffered, or may suffer, in relation to his expectations is the natural and probable result of market forces, not any wrongful conduct on the part of these adverse parties. Therefore, the trial court was correct when it dismissed his Third-Party Complaint on the motion of Plaintiffs/Third-Party Defendants, albeit for a different reason.
Zopff's assignments of error are overruled.
 Conclusion
The judgment of the trial court will be reversed with respect to the summary judgment rendered for Zopff on his claim for declaratory relief. The case is referred to the trial court on our mandate to enter summary judgment for Plaintiffs on their claim for declaratory relief, pursuant to their motion. In all other respects, the judgment of the trial court is affirmed.