[Cite as *Grace Fellowship Church, Inc. v. Harned*, 2013-Ohio-5852.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| GRACE FELLOWSHIP CHURCH, INC., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2013-T-0030** |
| - vs - | : | |
| JACK HARNED, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 893.

Judgment: Affirmed.

*Thomas C. Nader,* Nader & Nader, 5000 East Market Street, #33, Warren, OH 44484 (For Plaintiff-Appellee).

*Frank R. Bodor,* 157 Porter Street, N.E., Warren, OH 44483 (For Defendants-Appellants).

DIANE V. GRENDELL, J.

{¶1}   Defendants-appellants, Jack Harned, and several other owners of land in the Meadows Plat subdivision, appeal from the Judgment Entry of the Trumbull County Court of Common Pleas, entering partial summary judgment in favor of plaintiff-appellee, Grace Fellowship Church, Inc.  The issues to be determined in this case are whether a "modification clause" in a subdivision's restrictive covenants gives a purchaser of property notice that future changes may restrict his use of that property, and whether a clause allowing a majority of lot owners to "modify or change" the

existing covenants by adding new burdens, which may prevent a landowner from using the property for the purposes for which it was originally purchased, is permissible. For the following reasons, we affirm the judgment of the trial court.

{¶2} On August 7, 1989, owners of a tract of land recorded "Restrictions Covering All Lots and Parcels of Land in the Meadows Plat, Vienna Township." These 1989 restrictive covenants included 12 paragraphs governing building and use in the Meadows Plat subdivision. The first 11 paragraphs set forth various restrictions on the use of the property, including, inter alia, the required set-back line and size of dwellings, construction restrictions, and limitations on items that may be placed or parked on the parcels.

{¶3} Paragraph 12 of the 1989 restrictive covenants provided the following:

{¶4} The covenants herein shall be construed as covenants running with the land, and shall remain in effect until January 1, 1999, and thereafter, unless and except modified or changed by a vote of 51% or more, of the lot or acreage owners of this plat, the owner or owners being entitled to one vote for each lot owned or purchased on contract.

{¶5} On March 24, 2011, Grace Fellowship purchased land located at Lot 13 in the Meadows Plat. Grace Fellowship also purchased 70 acres of land adjacent to the Meadows Plat. After the purchases, a Grace Fellowship employee met with various landowners in the Meadows Plat to discuss Grace Fellowship's plans to build a church on the newly purchased land and to construct a driveway or access road upon Lot 13. Grace Fellowship's plans did not violate the 1989 restrictive covenants. On December 5, 2011, a majority of the owners in the Meadows Plat signed a document attempting to

amend the 1989 restrictive covenants, pursuant to paragraph 12. The amendment created additional restrictions on the usage of the property in the Meadows Plat. The 2011 amendment provided the following:

{¶6} 13. All lots or acreage contained in the original Meadows Plat shall be used solely for single family residential purposes. No lot or acreage contained therein shall be used for or contain a road, highway, alleyway, driveway, passageway, thoroughfare, avenue, street, route, parkway, byway, trail, lane, path, or parking lot that connects, services, or accesses any property or real estate located east of the Meadows Plat or land not contained in the original and initially created Meadows Plat filed in Volume 42 Page 52 of the Trumbull County Records of Plats.

{¶7} 14. No lot or block of lots in the Meadows Plat shall be subject to vacation or withdrawal from the original plat set forth in Volume 42 Page 52 of the Trumbull County Records of Plats.

{¶8} 15. This amendment or modification also ratifies and readopts all other restrictions contained in the original document of restrictions of Meadows Plat recorded in Volume 498 Page 64 of the Trumbull County Official Records.

{¶9} On April 18, 2012, Grace Fellowship filed a Complaint for Declaratory Judgment and Other Relief against the owners of the lots located in the Meadows Plat. Count One of the Complaint sought a declaration regarding the meaning of section 12 of the 1989 restrictive covenants and that the covenants had expired; Count Two requested a declaration that the 2011 amendment was "ineffective as to the owners

3

taking title prior to its date of recording" and void; Count Three sought a declaration that the 2011 amendment was void for public policy reasons; Count Four sought a declaration that the failure to give notice prior to the amendment rendered it void; and Count Five sought damages.

{¶10} Two separate Answers were filed by the various defendants on June 12 and July 12, 2012.

{¶11} The Meadows Plat landowners filed a Motion for Summary Judgment on November 16, 2012, arguing that the 1989 covenants had not expired; the landowners could amend the covenants; the amendment applied to existing landowners; and that notice was not required to obtain the votes necessary for the amendment.

{¶12} Grace Fellowship filed a Partial Motion for Summary Judgment on January 23, 2013, requesting summary judgment on Counts One, Two, and Four. Grace Fellowship argued that the restrictive covenants had expired on January 1, 1999, and that the 2011 amendment violated Ohio's Marketable Title Act because it allowed an increased burden to the property upon the amendment of the restrictive covenants. It also argued that the amendment violated its religious freedom, disallowed the church to have ingress and egress across the property, and that a proper vote was not held to modify the covenants.

{¶13} On February 22, 2013, the trial court issued a Judgment Entry, granting partial summary judgment in favor of Grace Fellowship on Counts Two and Four, and also granting summary judgment in favor of the landowners on Counts One and Three. The court held that the 1989 restrictive covenants are still in effect, as to Count One, and that there was no evidence to support the contention under Count Three that there was a religious motivation to the landowners' actions.

4

{¶14} Regarding the 2011 amendment, however, the court held that "the Amendment to the 1989 Meadows Plat restrictions cannot be enforced either in law or in equity" and declared the amendment to be void. The court held that the original restrictions did not mandate that only residential homes be constructed, the amendments added additional burdens to Grace Fellowship without notice, and that Grace Fellowship purchased the property with reliance on the existing restrictions.

{¶15} The Meadows Plat landowners timely appeal and raise the following assignments of error:

{¶16} "[1.] The trial court committed prejudicial error and abused its discretion in declaring void the 2011 amendment to the 1989 restrictive covenants.

{¶17} "[2.] The trial court committed prejudicial error and abused its discretion in failing to determine that proper notice was afforded appellee in the original 1989 restrictive covenants.

{¶18} "[3.] The trial court erred and committed prejudicial error in determining that appellee was required to vote in order for the amendments to the plat to be valid.

{¶19} "[4.] The trial court erred and abused its discretion in determining that the 2011 amendment was not in accord with the Ohio Marketable Title Act.

{¶20} "[5.] The trial court erred and abused its discretion in determining on page 4 of its judgment entry that the case is even stronger for the appellee because the 1989 restrictive covenants only allow for changes and modifications, not amendments or additional provisions.

{¶21} "[6.] The trial court erred and abused its discretion in failing to consider all of the covenants in the 1989 plat to attempt to understand the original property owners['] intention that the lots be used for residences and not for streets, or roads."

5

{¶22} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."  A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision."  (Citation omitted.)  *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶23} For ease of discussion, we will consider several assignments of error jointly.

{¶24} In their first assignment of error, the landowners argue that the 2011 amendment was not void, since it was permitted by the 1989 restrictive covenants.  In their second assignment of error, they argue that the restrictive covenants themselves gave Grace Fellowship proper notice of the landowners' ability to change the covenants through an agreement by the majority.  Further, in their fourth assignment of error, the landowners argue that any amendments to the original covenants did not violate the Ohio Marketable Title Act, emphasizing that there was no unknown burden to Grace Fellowship, given that the 1989 covenants stated they could be modified.

{¶25} A restrictive covenant is a "private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes,

6

building lines, architectural styles, and the uses to which the property may be put." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 28, citing *Black's Law Dictionary* 371 (7th Ed.Rev.1999). In the context of property law, a "covenant" denotes a contract that is either personal or "runs with the land." *Maasen v. Zopff*, 12th Dist. Warren Nos. CA98-10-135, CA98-10-138, and CA98-12-153, 1999 Ohio App. LEXIS 3422, 7 (July 26, 1999). Restrictions running with the land are "intended to limit the grantee's use of the land to specified purposes, with the object of protecting the interests of all landowners in the same allotment." *Id.* Ohio's legal system does not favor restrictions on the free use of real property. *Driscoll v. Austintown Assocs.*, 42 Ohio St.2d 263, 277, 328 N.E.2d 395 (1975); *Rockwood Homeowners Assn. v. Marchus*, 11th Dist. Lake No. 2006-L-130, 2007-Ohio-3012, ¶ 12 ("[i]t is well-established that restrictive covenants on the use of property are generally viewed with disfavor").

{¶26} A restrictive covenant is interpreted under general contract principles and "'when a covenant's language is indefinite, doubtful, and capable of contradictory interpretations, courts are to construe the covenant in favor of the free use of land. * * * However, courts must enforce a restriction where it is clearly and unambiguously found in a covenant.'" *S & S Aggregate, Inc. v. Brugmann*, 11th Dist. Portage No. 2001-P-0079, 2002-Ohio-7348, ¶ 13, citing *Brooks v. Orshoski*, 129 Ohio App.3d 386, 390, 717 N.E.2d 1137 (6th Dist.1998); *LuMac Dev. Corp. v. Buck Point Ltd. Partnership*, 61 Ohio App.3d 558, 563, 573 N.E.2d 681 (6th Dist.1988).

{¶27} In *Maasen*, the Twelfth Appellate District compiled five criteria to assist a court in analyzing whether an enforceable restriction has been created by a covenant. First, the restrictions "must be a part of the general subdivision plan" and applicable to

7

all lots. 1999 Ohio App. LEXIS 3422 at 9, citing *Grant v. Hickok Oil Co.*, 84 Ohio App. 509, 514, 87 N.E.2d 708 (6th Dist.1948). Second, "lot purchasers must be given adequate notice of the restriction." *Id.*, citing *Lopartkovich v. Rieger*, 66 Ohio App. 332, 335, 33 N.E.2d 1014 (9th Dist.1940). Third, the restrictions must be in accord with public policy. *Id.*, citing *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56, 62-63, 166 N.E. 887 (1929). Fourth, the restriction "cannot be implied, but must be express." *Id.*, citing *Taylor v. Summit Post No. 19, Am. Legion, Inc.*, 60 Ohio App. 201, 204, 20 N.E.2d 267 (9th Dist.1938). Finally, the restriction must run with the land and, as a result, be inserted in the form of a covenant in the owner's chain of title. *Id.*, citing *Davidson v. Buckeye Homes, Inc.,* 27 Ohio Law Abs. 570 (C.P.1942).

**{¶28}** In the present case, as the trial court explained, Grace Fellowship took title to Lot 13 subject to the 1989 restrictive covenants, which did not expressly mandate that residential homes be erected on each lot and did not prohibit the construction of access roads or driveways on a lot. Grace Fellowship relied upon the existing restrictions at the time it purchased Lot 13, since they did not prohibit its intended use for the property. The non-residential use restrictions, enacted through the 2011 amendment, became active *after* Grace Fellowship acquired Lot 13, and it had no actual notice of the restrictions.

**{¶29}** It must be emphasized that restrictive covenants are to be construed against restricting the use of the property. "The general rule, with respect to construing agreements limiting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate." *Bove v. Giebel*, 169 Ohio St. 325, 159 N.E.2d 425 (1959), paragraph one

8

of the syllabus. In a case such as the present matter, where there is a risk of a landowner's usage being greatly restricted by the amendment of the covenants, courts must protect the rights of the landowner. This is especially true when the landowner was not on notice of such a restriction and the change did not occur until after the purchase of the property. *See Van Deusen v. Ruth*, 125 S.W.2d 1, 14 (Mo.1939) (upholding a questioned modification clause that allowed additional restrictions would compel the court "to construe the clause under discussion most liberally in order to authorize new restrictions to be fostered upon the subdivision," in contravention of the policy to resolve the issue in favor of free use of real estate).

{¶30} Restrictions adopted after the purchase of land, under the landowners' interpretation of the law, can render the land completely unsuitable for the purpose for which it was purchased. Grace Fellowship purchased Lot 13 for the purpose of making it a driveway, aware that the covenants contained no restriction on such a use, presumably choosing the property based on this consideration. It is noteworthy that Grace Fellowship purchased 70 adjoining acres of property on the same date as the Meadows Plat property and that the inability to use the Meadows Plat property as intended can impact the additional land.

{¶31} The court in *McMillan v. Iserman*, 120 Mich.App. 785, 327 N.W.2d 559 (1982), reached a similar conclusion where the owners of property, in the absence of a restriction to the contrary, bound themselves by contract to a particular use of their land. An amendment to the deed restrictions prohibiting such use, ordering them to comply with the restrictions, was found to be unfair. The court held that "[e]ven with the knowledge that deed restrictions can be amended, lot owners have a right to rely on those restrictions in effect at the time they embark on a particular course of action

9

regarding the use of their land." *Id.* at 792. Although there was no contract for use in the present matter, the same principles apply. Grace Fellowship purchased Lot 13 at the same time it purchased 70 additional acres, with a plan to build a driveway on the lot to utilize the adjacent property, on which it planned to erect a church. It relied upon the absence of a deed restriction, just as the party did in *McMillan*.

{¶32} Applying amendments to existing landowners could completely alter a landowner's ability to use his property for the purposes for which it was intended. This would be similar to a governmental taking by a private entity and is not an equitable policy. It is also noteworthy, for the purposes of comparison, that in cases dealing with the general application of zoning and usage requirements exercised by local governments, a reasonable policy of "grandfathering in" past owners and uses is applied. *See State ex rel. Anderson v. Obetz*, 10th Dist. Franklin No. 06AP-1030, 2008-Ohio-4064, ¶ 69 (addressing grandfathering issue). A purchaser should be given the same right under restrictive covenants, at least to the extent that the change in the covenants is harmful to his interests.

{¶33} The Meadows Plat landowners contend the trial court erred because Grace Fellowship was on notice, at the time it purchased Lot 13, that a majority of lot owners could modify or change the covenants. However, it was not clear from the 1989 restrictive covenants that they would allow for a major modification that would retroactively remove a landowner's right to use his property as intended, especially given that they provided only that the "covenants herein" could be changed or modified. See *Lakeland Property Owners Assn. v. Larson*, 121 Ill.App.3d 805, 810 (Ill.App.Ct. 1984) (where the court noted that the modification of the covenant was limited to "changes of existing covenants" since the language that preceded the covenants stated

10

that changes were permitted to "the following covenants" and "the said covenants"). If the appellants' interpretation was accepted, it would create complete uncertainty and buyers would not be able to purchase a property with existing covenants for fear of what changes may eventually be made. It was reasonable, then, for Grace Fellowship to believe that the lack of a restriction regarding the building of a driveway on its property would allow them to build as they intended. The 2011 amendment did not just expand upon restrictions but created an entirely new restriction.

**{¶34}** The landowners also cite to *Maasen v. Zopff*, 1999 Ohio App. LEXIS 3422, extensively throughout their brief as support for the contention that Grace Fellowship was given notice of the potential modifications to the restrictive covenant through the modification provision in the 1989 covenants. We find no basis for following its holding, especially given the factual dissimilarities of the case. In *Maasen*, the court determined that a modification clause was valid and could be utilized to change the substance of the covenants, to the extent 60 percent of the owners agreed. *Id.* at 16-17. However, in its opinion, the court specifically emphasized that another case, *McMillan*, discussed above, was distinguishable because the party owned title to the lot *before* the restriction was adopted. In *Maasen*, the purchaser did not own the tract when the amendment occurred and was only a prospective purchaser. The court emphasized, therefore, that he did not suffer any damage to a legal or equitable interest. *Id.* at 19-20. Clearly, then, the court took into consideration whether an amendment will damage a party. Since the dissimilar facts in *Maasen* raised different considerations in that court's overall analysis, we decline to reach the same result in this case.

11

{¶35} Although the landowners argue that there was no case law to support the lower court's conclusion that the Ohio Marketable Title Act prevented the application of the 2011 amendment to Grace Fellowship, the trial court's consideration of this statute was not improper. This was not the sole basis for its conclusion but merely a factor it considered. Pursuant to R.C. 5301.49(A), for encumbrances to attach to marketable title, "specific identification [must] be made therein of a recorded title transaction which creates such easement, use restriction, or other interest." *See Semachko v. Hopko*, 35 Ohio App.2d 205, 211, 301 N.E.2d 560 (8th Dist.1973) ("[a]ny interest in land such as an easement or use restriction in existence prior to a root of title is extinguished unless it is * * * specifically stated or identified in the root of title"). It stands to reason that the purpose of this law is to give notice of restrictions to the purchasers, which cannot occur when covenants can be altered to deprive title holders from full usage of their property.

{¶36} Regarding the first assignment of error, it follows from the preceding analysis that, since the 2011 amendment was invalid and improperly restricted the rights of an existing property owner, the lower court did not err in finding it void.

{¶37} Furthermore, the 2011 amendment is also void because provision 14, which states that "[n]o lot or block of lots in the Meadows Plat shall be subject to vacation or withdrawal from the original plat," is improper. The approval of platting and subdivision issues is generally granted to the local government, not individual owners. For example, Section 711 of the Ohio Revised Code sets forth specific requirements for platting, which generally require the submission of the plat for approval to the board of county commissioners and allow boards of county commissioners to "adopt general rules governing plats and subdivisions of land falling within" their jurisdiction. R.C. 711.05(A) and (B); R.C. 711.10 (requiring approval of a plat in a subdivision in an

12

unincorporated territory in certain circumstances); *P. H. English, Inc. v. Koster*, 61 Ohio St.2d 17, 18, 399 N.E.2d 72 (1980) (R.C. 711.10 "grants county and regional planning commissions authority to adopt rules and regulations governing plats and subdivisions of land").

**{¶38}** Moreover, a plat certifying land outside of a municipal corporation, such as a township like Vienna, may not be recorded "without the approval thereon of the board of county commissioners of the county wherein such lands are situated." R.C. 711.041. To the extent that this amendment to the covenants, by creating rules related to the plat itself, may interfere with government authority over this issue, it must also be considered void.

**{¶39}** Although the dissent argues that the foregoing issue is not properly addressed by this court, it must be emphasized that appellate courts are permitted to consider additional reasons not raised by the trial court in reaching its decision. *Mensch v. Fisher*, 11th Dist. Portage No. 2002-P-0055, 2003-Ohio-5701, ¶ 54 ("[a]lthough for different reasons, we find that the trial court's judgment overruling appellant's motion" was proper); *Gurry v. C.P.*, 2012-Ohio-2640, 972 N.E.2d 154, ¶ 6 (8th Dist.) (affirming the trial court's decision "on different grounds"). *See also State v. Rubes*, 2012-Ohio-4100, 975 N.E.2d 1054, ¶ 33 (11th Dist.) ("[r]eviewing courts affirm and reverse judgments, not reasons") (citation omitted).

**{¶40}** Based on the foregoing considerations, the trial court properly found that the 2011 amendment was void and could not be enforced against Grace Fellowship.

**{¶41}** The first, second, and fourth assignments of error are without merit.

**{¶42}** In their third assignment of error, the landowners argue that Grace Fellowship was not required to be permitted to vote on the amendment. However, it is

13

unnecessary to determine whether Grace Fellowship was entitled to vote, since other grounds exist for finding that the amendment of the restrictive covenants was invalid as to Grace Fellowship.

{¶43} The third assignment of error is moot.

{¶44} In their fifth assignment of error, the landowners argue that the lower court erred in determining that the 1989 restrictive covenants allowed for only modifications of the covenants, not the addition of more provisions. As discussed thoroughly above, the lack of notice to Grace Fellowship of the restrictions on its property provided sufficient justification for the trial court's holding. This issue was merely an additional basis provided by the trial court for finding that the amendment was not enforceable against Grace Fellowship.

{¶45} The fifth assignment of error is moot.

{¶46} In their sixth assignment of error, the landowners argue that the trial court failed to consider all of the restrictions in the 1989 covenants to understand that the intention of the residents was for the lots to be used for residential purposes, not for streets or driveways.

{¶47} As noted above, covenants must be construed strictly and in favor of a landowner's free use of his property. The fact that the covenants contained various restrictions relating to residential homes does not warrant a conclusion that no other uses of the property could be made. If such an intent existed, it should have been expressly written into the 1989 restrictive covenants. The burden should not be on Grace Fellowship to review the covenants and determine what the landowners may have intended, but not actually included, in the covenants. A "limitation upon the use of the property is too serious a matter to be predicated upon mere inference. * * * If such

14

restrictions are to be enforced and such limited use maintained, the existence of the agreement to restrict must not be left to mere conjecture and inference." *Taylor*, 60 Ohio App. at 203, 20 N.E.2d 267 ("restrictions are not to be extended by conjecture or implication, or to be inferred from doubtful language") (citation omitted).

{¶48} The sixth assignment of error is without merit.

{¶49} Based on the foregoing, the judgment of the Trumbull County Court of Common Pleas, entering partial summary judgment in favor of Grace Fellowship Church, is affirmed. Costs to be taxed against appellants.

COLLEEN MARY O'TOOLE, J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

{¶50} Because I disagree with the ultimate disposition of the matter sub judice, I respectfully dissent.

{¶51} The majority's principal basis for affirming the trial court is its thesis that appellee purchased the property without actual notice of the restrictions contained in the 2011 Amendment. Because courts must protect a landowner's right to use his or her land freely and, by implication, strictly construe agreements limiting land use against any limitation, the majority maintains the purported lack of actual notice of the 2011 Amendment renders the modification void and unenforceable. With respect to the facts of this case, I disagree with the both majority's premise and conclusion.

15

**{¶52}** Initially, I acknowledge that Ohio's legal system does not favor restrictions on the free use of real property. *Driscoll v. Austintown Assocs.*, 42 Ohio St.2d 263, 277 (1975). This point notwithstanding, the language of a restrictive covenant is interpreted using the rules governing the interpretation of contracts. *Dillingham v. Do*, 12th Dist. Butler Nos. CA2002-01-004 and CA2002-01-017, 2002-Ohio-3349, ¶18. "If the covenant's language is indefinite, doubtful, and capable of contradictory interpretations, the court must construe the covenant in favor of the free use of land." *Cumberland Trail Homeowners Assn., Inc. v. Bush*, 5th Dist. Licking No. 11 CA 40, 2011-Ohio-6041, ¶13, citing *Houk v. Ross*, 34 Ohio St.2d 77 (1973), paragraph two of the syllabus. Alternatively, if the restriction is expressed in plain and unambiguous language, it must be given effect in accordance with its express provisions. *Taylor v. Summit Post Co. No. 19*, 60 Ohio App. 201, 204 (9th Dist.1938).

**{¶53}** In granting summary judgment, the trial court initially determined appellee took title to Lot 13 subject to the previously recorded 1989 restrictive covenants; these restrictions, however, did not expressly mandate residential homes be erected on each lot and they did not prohibit the construction of access roads or driveways on a lot or lots. The court underscored that appellee reasonably relied upon the existing restrictions at the time it purchased Lot 13. Because the non-residential use restrictions, enacted through the 2011 amendment, became active *after* appellee acquired Lot 13, the trial court determined, and the majority agrees, that appellee had no actual notice of the restrictions.

**{¶54}** Appellee, while not on actual notice of the specific driveway restriction enacted via the 2011 Amendments, was on actual notice that the covenants could be modified or changed; and, as a result, appellee had knowledge that it was subject to the

16

vagaries of the majority landowners' collective will as it pertains to the modification of the existing restrictions. The majority's position that appellees were not on actual notice of the specific burdens introduced by the 2011 Amendments is of no moment. Appellee had sufficient, actual notice of the existing restrictions and was on actual notice that existing restrictions could be modified or changed. Appellee elected to purchase the property with this knowledge. Appellee cannot now cry foul or reasonably claim, as a sophisticated corporate purchaser, that it was ignorant of the potential ramifications of purchasing the property in light of the potential that the restrictions could be changed and those changes could redound to their disadvantage.

{¶55} I further take issue with the trial court's, as well as the majority's, observation that appellee's position is strengthened by the language of the 1989 restrictive covenants because it "allow[s] for changes or modifications, not amendments or additional provisions." The distinction drawn by the trial court, as well as the majority, is one without difference.

{¶56} By drawing a distinction between "changes" or "modifications" and "amendments" or "additional provisions," the majority tacitly maintains that, via paragraph 12, a majority of landowners may only "change" or "modify" an existing burden. I acknowledge that paragraph 12 of the 1989 restrictive covenants permits "the covenants contained herein * * * [to be] modified or changed by a vote of 51% or more of the lot or acreage owners." I do not, however, read this clause as a limitation on the majority of landowners' ability to create additional, enforceable covenants.

{¶57} "Change" is defined as "to make different," "to make radically different," or "transform." Websters New Collegiate Dictionary, 1977, p.185-186. "Modify" is defined as "to make minor or fundamental changes" *Id.* at 739. The words "change" or "modify"

consequently include *any* alteration whether involving increased restrictions or decreased restrictions. Paragraph 12 therefore would permit the existing covenants to be changed or made different either through adding, loosening, or extinguishing burdens. I would therefore conclude that confining the meaning of the terms "change" or "modify" to the alteration of existing covenants is unnecessarily and arbitrarily narrow.

{¶58} This position finds support in *Maasen v. Zopff*, 12th Dist. Warren Nos. CA98-10-135, CA98-10-138, CA98-12-153, 1999 Ohio App. LEXIS 3422 (July 26, 1999). In *Maasen*, owners of property in a subdivision became aware of a contractor's intention to purchase a lot in the plat and construct an access road on the lot. Pursuant to a modification clause in its covenants, the owners subsequently amended restrictive covenants to prohibit the construction of roads and streets on any lot. The amendment clause permitted "these covenants" to be "amended by written consent of sixty (60) percent of the owners of tracts." The defendant ultimately purchased the lot with knowledge of the amendment. And before obtaining approval from the local planning commission to construct the roadway, the plaintiff-property owners commenced an action to enjoin the construction. The trial court ruled, inter alia, that the added covenant could not be applied to the defendant because, in its view, the modification provision could not be employed to impose new or additional burdens.

{¶59} On appeal, the Twelfth Appellate District disagreed, holding the structure of the original covenants authorized the owners to vote and amend any covenant, without limitation. The court observed:

{¶60} [W]here the power to amend is extended to subsequent grantees who are afforded a more or less democratic method of amendment, courts have generally viewed agreements to amend as mutual or

18

reciprocal covenants. And, just as courts have generally recognized the power of property owners to impose protective covenants, they have often not questioned contracts or covenants which permitted amendment of the restrictions imposed. *Id.* at *16, citing 4 ALR 3d 570.

{¶61} With this in mind, the court determined the modification provision authorized 60 percent of the owners of all tracts to vote and amend any covenant, without limitation. And, the court concluded, the provision was premised upon "a reasonably democratic process" and that "support[ed] a finding that the amendment provision * * * is a reciprocal covenant to which each owner agreed as part of the consideration the owner gave to acquire the fee interest in his or her tract." *Id.*

{¶62} The majority attempts to distinguish *Maasen* from the instant matter by pointing out the amendment in *Maasen* was recorded *prior to* the defendant taking ownership of the property. This, however, is a factual distinction that has no ultimate bearing upon the legal holding. The *Maasen* court determined the modification clause was valid and could be utilized to change the substance of the covenants, without limitation, to the extent 60 percent of the owners agreed. In this case, appellee took possession and ownership of Lot 13 with the knowledge that, through a democratic process, the covenants could be modified or changed by a vote of 51 percent of the landowners. Similar to the Twelfth District in *Massen*, I would conclude that the terms "change" and "modify" in paragraph 12 afford the landowners unlimited ability to increase or decrease the restrictions by a majority vote. And, because appellee took the property with actual knowledge of this possibility, it is bound by the amendments enacted pursuant to the procedures set forth in the original modification clause. Thus, I

19

would hold the trial court erred in concluding that paragraph 12 did not permit appellants to pass additional restrictions that run with the land.

{¶63} Further, the majority cites various cases in support of its position. These cases are either distinguishable from the instant matter or utilize the unnecessarily narrow construction of amendatory language. First, in *Van Deusen v. Ruth*, 343 Mo. 1096 (Mo.Sup.Ct. 1938), an instrument creating restrictions provided that burdens could be "modified, amended, released, or extinguished" by a percentage of the owners. The Missouri Supreme Court struck certain amendments to the covenants as invalid because they increased the burdens on landowners. The court held that the amendment provision, to the extent it permitted restrictions to be "released or extinguished," only contemplated amendments that lessened preexisting burdens. As the court in *Maasen*, *supra*, aptly observed:

> {¶64} The construction given the amendment provision in *Van Deusen* is consistent with the canon of construction *noscitur a sociis*, to interpret a general term ("modified, amended") in a series to be similar to more specific terms in the same series ("released, or extinguished"). However, covenant 9 of the Fairview Farms plat contains no more specific terms that limit the term "amendment" as it appears there. Therefore, *Van Deusen* offers little support for the trial court's holding that covenant 9 does not permit amendments that impose greater burdens or restrictions.

{¶65} Similar to the instrument in *Maasen*, the modification provision in this case contains no such specific language to limit the scope of the terms "change" or "modify."

20

{¶66} Further, in *Lakeland Property Owners Association v. Larson*, 121 Ill. App.3d 805 (Ill.App.Ct. 1984), an Illinois appellate court affirmed a trial court's conclusion that a modification clause in a covenant agreement, which authorized a majority of landowners to "change the covenants in whole or in part," only permitted the owners to change the existing covenants. In so holding, the court relied upon the language of the covenants that stated the modification clause permitted owners to change "the following covenants." *Id.* at 810. As discussed above, however, I discern no intellectually honest basis for confining the meaning of the word "change" to the act of modifying existing covenants when the term itself, in its ordinary meaning, necessarily denotes the possibility of both increasing and decreasing burdens. In my view, therefore, the distinction drawn by the court in *Lakeland* is artificial and ultimately unpersuasive.

{¶67} Moreover, in *McMillan v. Iserman*, 120 Mich. App. 785, an owner of a lot in a subdivision leased premises to a tenant for operation of a state-licensed group residential facility. Later, use restrictions applicable to the subdivision were amended, pursuant to a modification clause, to prohibit the facility. A Michigan appellate court concluded that the lot owners seeking to enforce the new restriction were estopped from enforcing the provision. The court reasoned the prohibition, that was enacted subsequent to the lease, should not be enforced because it would compel the owner into a breach of contract; further, the court determined the prohibition of a state-licensed facility was a violation of public policy.

{¶68} Here, there is nothing indicating appellee will be compelled to breach a contract with any third parties if the amendment is enforced. Furthermore, although Ohio law disfavors restrictions, I fail to see how, and appellee does not specifically

21

argue, that enforcement of the modification would violate public policy. For a restriction to be declared void for breach of public policy, it must violate some statute or be contrary to judicial decision, or against public health, safety, morals, or welfare. *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56 (1929). I am unaware of, and neither appellee nor the majority, cite a statute or judicial decision that would prohibit enforcement of the amendment. Moreover, enforcing the amendment, while contrary to appellee's interests, does not, in any obvious or direct way, function to compromise public health, safety, morals, or welfare.

{¶69} Notwithstanding the foregoing, the majority asserts, as an ostensible appeal to public policy, that enforcement of the 2011 Amendment would be unfair because "it would create complete uncertainty and buyers would not be able to purchase a property with existing covenants for fear of what changes may eventually be made." In my view, this potential eventuality does not smack of unfairness where, as here, a buyer takes a property with actual knowledge that the restrictions in place at the time of purchase could be increased, decreased, or extinguished. Holding an informed buyer to the terms of the covenant they were aware of at the time of purchase is not an act of unfairness. To the contrary, the majority's position operates to unfairly interfere with the existing landowners' freedom to contract and, in effect, renders an otherwise valid modification clause a nullity.

{¶70} Next, I take issue with the majority's supplemental conclusion that the 2011 Amendment is void because provision 14 is legally problematic. That provision provides that "[n]o lot or block of lots in the Meadows plat shall be subject to vacation or withdrawal from the original plat." The majority notes that this provision is contrary to law because "[t]he approval of platting and subdivision issues is generally granted to the

22

local government, not individual owners." The trial court did not base its legal conclusion on the propriety of provision 14 in its judgment. Moreover, appellee did not file a cross-assignment of error contesting the propriety of provision 14 as an additional basis for upholding the trial court's decision. The issue is simply not before this court.

{¶71} Given these points, I maintain it is improper for this court to evaluate, sua sponte, for the first time on appeal, an issue that was neither a basis for the trial court's decision nor briefed by the parties. This is especially true where the purported legal problem is not entirely manifest. That is, provision 14 seems merely to restrict a landowner's ability to withdraw their property, perhaps by some strange act of cessation, from the original plat; this limitation does not confer any specific authority to the landowners to re-plat the development or approve additional plats. Because the restriction does not obviously violate the law, I believe the majority's analysis, in this regard, goes too far. Where there is no conclusion upon which this court can impute error to the trial court and appellee did not advance any argument regarding the invalidity of provision 14 in further support of the trial court's judgment, I maintain this court should exercise judicial restraint and refrain from dispositive comment on the issue.

{¶72} Finally, although the majority does not address the issue, I would additionally hold appellant's contention that the amendment was void because appellants failed to provide appellee notice that an amendment was being considered by the lot owners is also without merit. Paragraph 12 states that the 1989 restrictive covenants could be modified or changed by a vote of 51% or more of the landowners. The modification clause further provides that each lot owner is entitled to one vote for each lot owned. The only requirement for modification is a majority vote of the owners.

23

And the instrument does not set forth a specific procedure for seeking or proposing a modification. Accordingly, although appellee was entitled to a "vote" on the proposed amendment, this does not mean the drafter(s) of the proposed amendment were required to give notice to all owners or hold a meeting on the proposal. The language of the instrument simply requires majority approval and, once a majority is achieved, the requisite protocol under the provision was satisfied. The record indicates the 2011 amendment was supported by 60% of the landowners. I would additionally hold, therefore, the trial court erred, as a matter of law, in granting summary judgment and holding the amendment void based upon appellants failure to hold a meeting on the proposed amendment.

{¶73} In light of the foregoing, I would conclude the language of the modification clause in the Meadows Plat restrictive covenant plan permits the majority of the landowners to increase burdens over the use of the subdivision by prohibiting the construction of, inter alia, driveways and access roads over lots for public access to adjacent lots. I would therefore hold the 2011 amendment is enforceable and the trial court erred, as a matter of law, in ruling the 2011 amendment void. I would consequently sustain appellants' first, second, third, and fifth assignments of error and reverse the judgment of the trial court. Given this conclusion, I would hold appellants' fourth and sixth assigned errors moot.

{¶74} For the above-stated reasons, I dissent.