[Cite as *Edwards v. Plalan Lake Road Maintenance, Inc.*, 2018-Ohio-1670.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RICHARD A. EDWARDS, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-T-0031** |
| PLALAN LAKE ROAD MAINTENANCE, INC., | : | |
| | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2014 CV 00627.

Judgment: Affirmed in part; reversed in part and remanded.

*Kevin P. Murphy*, and *Matthew G. Vansuch*, Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., Suite #500, Warren, OH 44481 (For Plaintiff-Appellee).

*Thomas C. Nader*, Nader & Nader, 5000 East Market Street, Suite #33, Warren, OH 44484 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from an entry granting summary judgment in favor of appellee, Richard A. Edwards, on all issues in his declaratory judgment claim. Appellant, Plalan Lake Road Maintenance, Inc., argues that the trial court erred in calculating the amount of yearly fees Edwards is required to pay for the maintenance of private roads within a housing development. For the following reasons, the judgment is

affirmed in part, reversed in part, and remanded.

{¶2} In 2005, Edwards purchased ten distinct tracts of land in the Plalan Lakes and Park subdivision. This housing development was formed in 1961 when Morris Goldsmith executed a quitclaim deed in favor of Albert A. Wickley, Jr., in regard to a substantial parcel of land in Farmington Township, Trumbull County, Ohio. Under its original plat, the subdivision had eighty-eight building lots intended for residential homes, larger tracts of land for a park/resort area, and at least five private roads.

{¶3} Pursuant to the terms of the "Goldsmith" quitclaim deed, Wickley agreed to take the entire parcel subject to certain restrictions. One restriction addresses the "recreational" area and the maintenance of the private roads:

{¶4} "No owner of a lot in this subdivision shall have any interest in or right to use the recreational area or lake area in this subdivision as shown upon the plat recorded in Plat Volume 27, Page 8 of the Trumbull County Records unless he is the owner of an interest in such recreational area or lake area holding a deed or certificate evidencing such interest therein. * * * Each owner of a lot as described herein shall, in the event he is not the owner of a certificate or deed evidencing an interest in the recreational area and lake area in this subdivision, pay the sum of Twenty Dollars ($20.00) per year annually upon such date as may be determined by the owner or a Board of Trustees established by such owner, for the purpose of the maintenance of such private roads and the payment of taxes on the area comprising such roads."

{¶5} During the first decade of the subdivision's existence, steps were taken to develop the recreational area of the proposed park/resort. However, a majority of the land comprising the recreational area remained undeveloped. Moreover, Albert A.

2

Wickley, Jr. did not retain ownership of the undeveloped recreational tracts or the unsold "building" lots. At some point, these parts of the subdivision, plus the land upon which the private roads were located, were conveyed to Plalan Lake and Park, Inc.

{¶6} Sometime in the 1990's, appellant was formed as a separate corporate entity for the express purpose of taking ownership of the subdivision's private roads and providing for their maintenance. Initially, Plalan Lake and Park conveyed the property comprising two of the private subdivision roads to appellant. However, ownership of the remaining three roads, including Lake Road and South Park Road, stayed with Plalan Lake and Park until August 2001. These two roads conveyed to appellant intersect. Under the original plat, one corner of the proposed recreational area abutted the intersection. In addition, three of the large tracts forming the recreational area were adjacent to the entire length of South Park Road. As to the section of Lake Road that was adjacent to the corner of the recreational area, six building lots abutted the road on the other side. As of 2001, none of these six lots had been sold to an individual owner for construction of a house.

{¶7} In August 2001, Plalan Lake and Park executed a general warranty deed in favor of Albert A. Wickley, Jr., conveying to him ten adjoining tracts of land within the subdivision. Six of the tracts were the vacant building lots that abutted the northern-most section of Lake Road. The remaining four tracts formed a significant portion of the land which had been designated as the recreational area on the original plat. Of those four tracts, three were the large parcels of land that were adjacent to the entire length of South Park Road.

{¶8} The general warranty deed to Wickley contains terms labeled

3

"Covenants." The "Roads" covenant governing the payment of road maintenance fees states:

**{¶9}** "Grantee shall pay the current equivalent value in dollars of One Hundred (Year 2000) Dollars ($100.00) per year, for each 200 ft. road frontage which such owner owns, for road maintenance, annually, to the Grantor and its assigns on the date, and upon such terms as the Grantor and its assigns shall determine and direct."

**{¶10}** In relation to the subdivision roads, the covenants in the "Wickley" general warranty deed provided:

**{¶11}** "Grantor reserves the right to convey any road on which the above described premises has frontage to Plalan Lake Road Maintenance, Inc. In the event of such a conveyance, the bylaws of said corporation shall supersede the provisions in this document."

**{¶12}** The "Wickley" general warranty deed was recorded on August 17, 2001. Five days later, a separate quitclaim deed was recorded, under which Plalan Lake and Park conveyed its interest in the land underlying the three remaining subdivision roads, including Lake Road and South Park Road, to appellant. This deed also had a specific provision governing Plalan Lake and Park's payment of road maintenance fees based upon any subdivision property it still owned.

**{¶13}** At some point, appellant enacted a code of regulations, i.e., a set of bylaws, to govern its operation. In addition to providing that the general purpose of the corporation is to acquire title to and maintain, all roads in the subdivision, the bylaws have two provisions relating to the payment of maintenance fees. The first provision pertained to land that belonged to either Plalan Lake and Park or Albert A. Wickley, Jr.:

4

{¶14} "The Board may require Plalan Lake & Park, Inc. and/or Al Wickley, Jr. to pay road maintenance fees of forty-five ($45.00) dollars per year for each 500 feet of frontage of land managed for recreational use and [fees] of forty-five ($45.00) dollars per 200 feet of frontage of land held for other than recreational use as a condition to the transfer of any road, or part thereof."

{¶15} The second "fee" provision in appellant's bylaws pertained to the building lots within the subdivision: "The Board of Trustees shall assess an annual road maintenance fee of forty-five ($45.00) dollars per lot on each member's lot(s)."

{¶16} In 2005, Edwards purchased from Wickley the entire parcel of land which Wickley acquired from Plalan Lake and Park under the 2001 general warranty deed. As noted above, this parcel included six building lots and three large tracts which originally formed a substantial portion of the proposed park/resort.

{¶17} After owning the land for over six years, Edwards brought a proceeding in the Trumbull County Planning Commission to re-plat four of the six building lots so that they would be combined with each other and to one of the adjacent larger tracts to form one huge lot for his residence. In February 2012, the planning commission approved Edwards's plan, and the area was re-platted to show the new combination. Even though appellant's Board of Trustees was aware of the re-plat proceeding, no objections were raised.

{¶18} The northern-most section of Lake Road dissected Edwards's combined lot and dead-ended on his property. Therefore, in conjunction with the re-plat proceeding, Edwards purchased the land underlying that section of Lake Road from appellant, and began to use the old road as the driveway to his residence.

5

**{¶19}** In February 2013, Edwards received an invoice from appellant for his 2013 road maintenance fees. The invoice contained a "building lot" charge for each of the six lots Edwards had obtained from Wickley rather than for the two remaining lots not combined with the large tract. As to Edwards's other four tracts and the "old road" land, appellant charged him a set rate for every 200 feet of frontage of land on a subdivision road, as set in the 2001 Wickley general warranty deed.

**{¶20}** In 2014, appellant again charged Edwards a separate "building lot" fee for the four building lots that had been combined with the larger tract. Moreover, as to the remaining four tracts and the road land, appellant again charged him for every 200 feet of frontage. The only difference between the 2013 and 2014 invoices was the rate for the frontage. The 2014 invoice stated that the set rate was predicated upon the applicable provision in appellant's bylaws.

**{¶21}** Within two months of receiving the 2014 fee invoice, Edwards brought the underlying case against appellant, seeking a declaratory judgment regarding the correct means of calculating his road maintenance fees. As to the "building lot" fee, Edwards essentially alleged that he could not be charged a fee for each of the four lots when they no longer exist under the revised plat. In relation to his remaining tracts of land, he asserted that appellant could only charge him the set rate for every 500 feet of frontage, instead of every 200 feet of frontage, because he was only using that land for recreational purposes.

**{¶22}** After appellant answered Edwards's claim and asserted a counterclaim for declaratory judgment on the same two issues, the parties submitted competing motions for summary judgment. Concerning the "building lot" question, Edwards first maintained

that appellant should not be permitted to rely upon any restrictive covenant in the 2001 Wickley general warranty deed because it was "doubtful" that the covenant could be logically applied to this situation. Edwards further maintained that a "building lot" fee could not be charged for any of the four re-platted lots because, since the northern section of Lake Road no longer exists, the lots have no frontage on a road. In response, appellant argued that its ability to charge a fee for each of the four lots was controlled by the applicable covenants in the original 1961 quitclaim deed from Goldsmith to Wickley. Appellant further argued that Edwards should be required to pay the same amount of "building lot" fees because, regardless of the new plat, he still owns the same amount of land.

{¶23} Regarding Edwards's remaining tracts and whether he should be charged for every 200 feet of frontage, Edwards first noted that, under the controlling provision in appellant's bylaws, he should only be charged for every 500 feet of frontage if the land in question is "managed for recreational use." Citing his own affidavit attached to his motion, Edwards then asserted that the "500 feet" provision applied to his land because he held that land solely for recreational purposes. In response, appellant argued that Edwards's personal use of the land was not controlling as to whether the property was being "managed' for recreational use. Citing the 1961 quitclaim deed and the original plat for the subdivision, appellant contended that the provision in the bylaws had to be construed in light of the fact that the four tracts in question were intended to be used for the park/resort. Hence, according to appellant, Edwards was only entitled to invoke the "500 feet" provision if he was using the land as a park or resort.

{¶24} In granting Edwards's motion for summary judgment, the trial court ruled

7

in his favor on both pending issues. First, as to the "building lot" fee, the trial court held that the provision in appellant's bylaws was controlling over any restrictive covenant in the various deeds, and that provision only allowed for an assessment of $45.00 *per lot.* The court then concluded that, since the four building lots had been consolidated into another tract, only one $45.00 fee could be charged. Second, as to the remaining tracts and whether Edwards should be charged for every 200 or 500 feet, the trial court did not address appellant's argument regarding the effect of the original 1961 quitclaim deed. Instead, the court found that appellant had not contradicted Edwards's averment that he was using the at issue land solely for recreational purposes. Accordingly, the court ordered that: (1) appellant could only assess the "building lot" fee for lots that actually have frontage on a subdivision road and are presently in existence; and (2) appellant could only assess a fee of $45.00 for every 500 feet of Edwards's remaining tracts that have frontage on subdivision roads.

{¶25} In appealing, appellant asserts two assignments of error for review:

{¶26} "[1.] The trial court erred in its conclusion that the consolidation by appellee of five subdivision lots into one larger lot reduces the appellee's obligation to pay for common area assessments from five lots to one lot.

{¶27} "[2.] The trial court erred in its interpretation that the lands owned by appellee were lands managed for recreational use."

{¶28} The first assignment pertains to the "building lot fee" dispute. Appellant maintains that the trial court erred in not holding that a provision in the 1961 quitclaim deed was dispositive of the issue of whether Edwards was required to pay an annual lot fee for each of the four lots that were subsumed into the adjacent larger tract. Appellant

8

further argues that the trial court's decision failed to account for the fact that if Edwards is no longer liable for the four lot fees, the fees of the remaining building lot owners for maintaining the subdivision roads will necessarily increase.

{¶29} As a preliminary matter, even though appellant referred to the original 1961 deed in its summary judgment motion, the trial court did not address this argument. In his summary judgment motion, Edwards asserted that appellant was likely to rely upon restrictive covenants in the 2001 general warranty deed from Plalan Lake and Park to Wickley and the 2001 quitclaim deed from Plalan Lake and Park to appellant. In its judgment, the trial court only referenced those two deeds in its "restrictive covenant" analysis. However, in its motion, appellant relied primarily upon the 1961 deed, not the two 2001 deeds. But, notwithstanding appellant's specific argument, the outcome is the same.

{¶30} As noted above, the Plalan Lake and Park subdivision was formed as part of the 1961 quitclaim deed from Morris Goldsmith to Albert A. Wickley, Jr. In claiming that this deed mandates that the number of building lots in the subdivision must always remain the same for purposes of the road maintenance fee for such lots, appellant cites the following language from the "Covenants" section of that deed: "Each owner of a lot *as described herein* shall * * * pay the sum of Twenty Dollars ($20.00) per year annually * * * for the purpose of the maintenance of such private roads * * *." (Emphasis added.)

{¶31} Based upon the italicized language, appellant contends that Goldsmith and Wickley clearly intended for the number of lots in the subdivision to remain constant; i.e., since the original plat called for eighty-eight building lots, there would always be eighty-eight "lot" fees paid for use in maintaining the private roads. In light of

9

this, appellant submits that, regardless of whether four of Edwards's building lots have been consolidated into the adjacent larger tract in the new 2012 plat, he must still pay a lot maintenance fee for each of the four lots because the amount of revenue generated from those fees must always remain consistent.

{¶32} "A restrictive covenant is a 'private agreement, (usually) in a deed or lease, that restricts the use or occupancy of real property, (especially) by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.' *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶28, citing *Black's Law Dictionary* 371 (7th Ed.Rev.1999). In the context of property law, a 'covenant' denotes a contract that is either personal or 'runs with the land.' *Maasen v. Zopff*, 12th Dist. Warren Nos. CA98-10-135, CA98-10-138, and CA98-10-153, 1999 Ohio App. LEXIS 3422, *7 (July 26, 1999). Restrictions running with the land are 'intended to limit the grantee's use of the land to specified purposes, with the object of protecting the interests of all landowners in the same allotment.' *Id*." *Grace Fellowship Church, Inc. v. Harned*, 11th Dist. Trumbull No. 2013-T-0030, 2013-Ohio-5852, ¶25.

{¶33} As a contract, a restrictive covenant must be construed in accordance with general contract principles. *Orwell Natural Gas Co., Inc. v. Fredon Corp.*, 11th Dist. Lake No. 2014-L-026, 2015-Ohio-1212, ¶23, quoting *Grace Fellowship Church*, at ¶26. Thus, a restriction in land use must be enforced when it is clearly and unambiguously set forth in a covenant. *Id*. However, if the wording of a covenant is indefinite, doubtful, and capable of contradictory interpretations, it must be construed in a manner favorable to the free use of land. *Id*. Furthermore, as one of the criteria for determining whether a restrictive covenant is enforceable, Ohio courts must consider whether the restriction is

10

expressly stated, not implied. *Grace Fellowship Church*, at ¶27.

**{¶34}** In this case, the cited provision in the 1961 quitclaim deed is not explicit enough to support appellant's interpretation. While the use of the phrase "as described herein" clearly indicates that each owner of a residential lot will be required to pay a fee for the maintenance of the subdivision roads, the language is not sufficiently clear to expressly forbid the consolidation of building lots for purposes of the maintenance fee. If Goldsmith and Wickley truly intended to require that, for purposes of the fee, the size of a "building lot" could never be altered, additional language was necessary.

**{¶35}** Under such circumstances, Edwards cannot be obligated to pay fees for four building lots that no longer exist on the existing subdivision plat.

**{¶36}** Hence, as the trial court did not err in granting summary judgment in favor of Edwards on the "lot" issue, appellant's first assignment lacks merit.

**{¶37}** Under its second assignment, appellant challenges the trial court's ruling as to the means for calculating the amount of road maintenance fees Edwards must pay in relation to the other four tracts he purchased from Wickley. As noted above, the court interpreted a provision of appellant's bylaws to require Edwards to pay $45.00 for every 500 feet of frontage on a subdivision road, as compared to every 200 feet. This holding was based upon the trial court's holding that Edwards was "managing" these tracts for recreational use, as required by the bylaws. Appellant again argues that the trial court's interpretation was flawed because the bylaw provision should have been construed in light of the 1961 quitclaim deed.

**{¶38}** Preliminarily, the record again shows that, even though appellant asserted this argument in its summary judgment motion, the trial court did not review it as part of

11

the analysis in its final judgment. In this instance, the failure to consider the argument was prejudicial to appellant, as the evidentiary materials attached to appellant's motion demonstrate that the argument has merit.

{¶39} The four tracts in question were not building lots, but instead were larger parcels of property, three of which had frontage on South Park Road. The 2001 general warranty deed from Plalan Lake and Park to Wickley had a specific provision governing the calculation of the road maintenance fees for these particular tracts. However, that deed also provided that if the roads upon which the tracts had frontage were ever sold to appellant, its bylaws would supersede the terms of the deed.

{¶40} In regard to the four tracts involved, the bylaws have a relevant provision. Specifically, section 2.06(f) of the bylaws delineated two procedures for calculating the amount of road maintenance fees for the tracts: (1) $45.00 for every 500 feet of frontage if the land is "managed" for recreational use; or (2) $45.00 for every 200 feet of frontage if the land is "held" for any use other than recreational use.

{¶41} According to appellant, Edwards could not invoke the 500 foot provision if he was merely holding the four tracts for his own personal recreation. Instead, in light of the inclusion of the word "managed" in the provision, the 500 foot provision is invoked if appellant is maintaining the property as a recreational area for other people. Appellant's interpretation is predicated upon its assertion that, when the subdivision was formed in 1961, the four tracts in question were set aside for use as a park/resort.

{¶42} Appellant's undisputed evidentiary material readily supports its assertion. Attached to appellant's summary judgment motion was a copy of the original plat for the subdivision. The authenticity of this document was never contested by Edwards. The

12

original plat clearly shows that the four at issue tracts were labeled as a "park resort area;" i.e., recreational area. In addition, appellant correctly notes that the 1961 quitclaim deed contains a term that distinguished between the building lots and the "recreational" area:

{¶43} "No owner of a lot in this subdivision shall have any interest in or right to use the recreational area or lake area in this subdivision as shown upon the plat recorded in Plat Volume 27, Page 8 of the Trumbull County Records unless he is the owner of an interest in such recreational area or lake area holding a deed or certificate evidencing such interest therein."

{¶44} In his response to appellant's summary judgment motion, Edwards argued that the bylaw provision must be applied based on his current use of the four larger tracts, not upon the intended use in 1961. However, if the writer of the bylaw provision meant for the 500 feet provision to apply when the owner is only using the tracts for personal recreational purposes, there would have been no reason to include the word "managed" in the provision; i.e., the writer could have simply said that the rate was $45.00 for every 500 feet of frontage when the land was being held for recreational purposes. The inclusion of the word "managed" was intended to reference the proposed use of the four tracts under the original plat.

{¶45} In his affidavit attached to his motion for summary judgment, Edwards averred that he was holding the four larger tracts as recreational property. He did not aver that he was managing the tracts as a recreational area for others. It is clear that the land at issue is currently part of one single residential lot. Accordingly, the $45.00 per 200 feet provision applies rather than the 500 feet provision.

13

{¶46} The trial court's decision is affirmed in part, reversed in part, and remanded.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concurs.